IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| GENERAL INDUSTRIAL | * | Chapter 7 |
| MAINTENANCE CO., INC., | * | |
|     Debtor | * | |
| | * | Case No.: 1-04-bk-01336MDF |
| GENERAL INDUSTRIAL | * | |
| MAINTENANCE CO., INC., | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | Adv. No. 1-04-ap-00230 |
| | * | |
| KELLOGG COMPANY and | * | |
| HUFFNAGLE MAINTENANCE | * | |
| & SOLUTIONS, | * | |
|     Defendants | * | |

## OPINION

### Procedural and Factual History

Before me is Kellogg Company's motion under Fed.R.Civ.P. 12(b) to dismiss the complaint in the above-captioned adversary case. In the complaint, General Industrial Maintenance Co., Inc. ("Debtor") seeks an award of monetary damages against Kellogg Company ("Kellogg") based on Kellogg's termination of its business relationship with Debtor.[1] The complaint also seeks damages against Huffnagle Maintenance & Solutions ("HMS") for interfering in the business relationship between Debtor and Kellogg. The background for the complaint and the motion to dismiss is as follows.

---

[1]The complaint was filed by Debtor while the case was in chapter 11. On December 1, 2006, the case was converted to chapter 7 and shortly thereafter Lawrence V. Young was appointed as the chapter 7 trustee.

1

Debtor was in the business of providing construction and maintenance services to industrial facilities. Kellogg, Debtor's primary customer, contracted with Debtor to perform services on an ad hoc basis using purchase orders that Kellogg would issue for specific projects. No umbrella service contract existed between the parties. Debtor worked for Kellogg with sufficient frequency to justify the placement of two trailers owned by Debtor – a temporary office and a storage unit – at Kellogg's Lancaster, Pennsylvania facility.

Kellogg and Debtor disagree on the reasons why Kellogg ceased using Debtor's services after 2003. Debtor alleges that HMS, while working as Debtor's subcontractor, undermined the business relationship between Debtor and Kellogg. Kellogg and HMS deny this allegation without asserting an alternative reason for the discontinuation of Kellogg's business relationship with Debtor. Ultimately, Kellogg hired HMS to perform services previously performed by Debtor. Kellogg admits that in early March 2004, it cancelled a project that Debtor was scheduled to perform and stopped payment on a $16,335.00 check ADVANCED [issued] in ANTICIPATION [payment] of the services. Debtor alleges that it was forced to file for bankruptcy when Kellogg failed to pay all or part of Debtor's costs related to this project. (Amended Complaint, paragraphs 48 and 51.)

Debtor's petition was filed on March 8, 2004. In the required schedules and statements filed with the petition, Debtor listed personal property valued at $56,458.14, including accounts receivable valued at $4,933.14. Debtor affirmatively indicated that it had no contingent or unliquidated claims and did not list the claims it is now asserting against Kellogg and HMS. Debtor has not amended or supplemented these schedules.

On October 18, 2004, Debtor filed a complaint (the "Complaint") commencing the

2

instant adversary case. The Complaint, which was filed "on an emergency basis to toll the running of any statute of limitations," was not drafted with precision. *See* Debtor's Answer to Kellogg's Motion to Dismiss, para. 20. Despite the meager value of personal property and accounts receivable identified in its schedules, Debtor alleges a claim against Kellogg for industrial maintenance services including: "Sixty Thousand ($60,000.00) Dollars for research and development of project and materials costs for floor coatings;" "Twenty-Two Thousand Eight Hundred ($22,800.00) Dollars fro (sic) the creation of a custom job-costing program;" "Nineteen Thousand ($19,900.00) [sic] Dollars to dispose of Kellogg-generated waste, paving the storage area, and labor;" and "Four Hundred Thousand ($400,000.00) Dollars as a result of lost profits due to Kellogg's refusal to return to the Debtor its tools and equipment." The Complaint also cryptically alleges that "[t]he actions by Kellogg and/or [HMS] may be subject to the RICO statute." (Complaint, para. 16.) Based on all of these allegations, but without expressly invoking the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 - 1968, the Complaint demands judgment against Defendants jointly and severally in the aggregate amount of $501,800.00.

HMS filed an answer to the Complaint on October 24, 2005. Kellogg filed the instant motion to dismiss on October 28, 2005. On November 18, 2005, Kellogg certified to the Court that no answer had been filed to the motion to dismiss and averred that the motion could be deemed uncontested pursuant to L.B.R. 7007-1(c). On November 19, 2005, Debtor filed a Response and Motion to Strike the certification of default. This Response alleged that Debtor's counsel previously had notified Kellogg's counsel that Debtor would be filing an amended complaint. Based on this allegation, Debtor averred that the certification was filed by Kellogg

3

"under false pretenses." (Response and Motion to Strike, para. 3.) Debtor requested an "extension" of fifteen days in which to submit an amended complaint ("Amended Complaint"), which was filed on December 16, 2005.[2] At a hearing held on December 19, 2005, the parties agreed that Kellogg's motion to dismiss should be treated as a motion to dismiss the Amended Complaint.[3]

---

[2] On December 12, 2005, Kellogg filed a motion to impose sanctions against Debtor and its counsel, Sara Austin, Esquire, alleging that the original complaint was filed for an improper purpose, that the claims were not warranted by existing law or by a nonfrivolous argument for extension, modification or reversal of existing law, and that the allegations of the Complaint lacked evidentiary support. On December 19, 2005, Debtor moved to "strike and/or dismiss/deny" the motion for sanctions. These motions had not yet been adjudicated at the time the Amended Complaint was filed. The filing of the Amended Complaint rendered the motion for sanctions moot. *See Chada v. Olympia*, 929 F.2d 703 (7th Cir. 1991) (motion for sanctions for filing of allegedly frivolous complaint treated as moot by district court after filing of amended complaint), *Carousel Foods of America, Inc. v. Abrams & Co., Inc.,* 423 F.Supp. 2d 119 (S.D. N.Y. 2006) (plaintiff's counsel mooted original sanctions motion by advising court that he would file an amended complaint).

[3] In its Motion to Dismiss, Kellogg raises several points regarding the sufficiency of process or service of process in this case under Fed.R.Civ.P. 12(b)(4) and (5). The case docket entries support Kellogg's arguments. On July 28, 2005, a summons was issued setting August 27, 2005 as the answer date on the Complaint. No certificate of service of the summons was filed in a timely manner by Debtor. Therefore, on September 20, 2005, the Clerk issued a notice informing Debtor that the adversary case would be terminated unless a pleading were filed to request that the case remain open. On September 26, 2005, Debtor's counsel directed correspondence to the Clerk stating that "the Debtor intends to go forward with this adversary in the near future. It will serve the Summons and proceed thereafter." Based on this correspondence, the Clerk reissued a summons on October 5, 2005. According to a certificate of service dated October 7, 2005, Counsel for Debtor served the new summons on "Kellogg Company, c/o Michael Warner, Esq., 1700 City Center Tower II, 301 Commerce Street, Fort Worth, TX 76102." Mr. Warner is an attorney at Warner Stevens, LLP, which has represented Kellogg in the instant adversary case along with local counsel, Saul Ewing, LLP. In its motion to dismiss, Kellogg avers that Warner was not its "authorized agent for service" and so service was not effective. *See In re the Muralo Company, Inc.*, 295 B.R. 512 (Bankr. D. N.J. 2003) ("An attorney, solely by reason of his capacity as an attorney, does not thereby become his client's agent authorized by 'appointment . . . to receive service of process.'") Kellogg's motion to dismiss, filed six weeks prior to the Amended Complaint, provided the name and address of its authorized agent for service. Nonetheless, when the Amended Complaint was filed, Debtor's

4

The Amended Complaint expands the original Complaint by adding over fifty paragraphs of factual allegations and dividing the causes of action into six (6) separate counts, including a count seeking damages under RICO. Other than Count IV, which alleges violations of RICO, none of the counts specify the legal theory upon which the claim for damages is predicated. The amount of damages demanded in the Amended Complaint exceeds $3 million, a significant increase from the $501,800.00 claimed in the original Complaint.

## Discussion

In deciding a motion to dismiss, the Court must treat the facts alleged in the complaint as true, construe the complaint in the light most favorable to the non-moving party, draw all reasonable inferences that can be drawn therefrom in favor of the non-moving party, and ask whether, under any reasonable reading of the complaint, the non-moving party may be entitled to relief. *Kehr Packages, Inc.v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d. Cir. 1991), *cert. denied*, 111 S.Ct. 2839 (1991). The Court need not determine whether or not the non-moving party ultimately will prevail, but only whether the plaintiff would be entitled to relief under any set of facts that could be proven consistent with the allegations set forth in the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). Although the standard of review is liberal, the assertion of bare legal conclusions is insufficient to avoid dismissal. When considering a motion to dismiss, a court's review generally is limited to the allegations in the complaint, exhibits attached thereto and matters of public record. *Pension Benefit Guaranty Corp. v. White*

---

counsel *still* did not serve Kellogg's authorized agent, but instead served only local counsel, Saul Ewing. Therefore, Kellogg's motion to dismiss under Fed. R. Civ. P. 12(b)(4)and (5) is not without merit. However, the Court has determined that the Amended Complaint will be dismissed based upon substantive deficiencies discussed below.

5

*Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)(citing 5A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed. 1990)). Courts also may consider any document that a defendant attaches to a motion to dismiss if the plaintiff's claim is based on the document and the authenticity of the document is not subject to dispute. *Id.*[4]

After reviewing the Amended Complaint, the Court could not decipher the precise legal theories upon which Debtor based its claim for damages. Although the Amended Complaint includes separate counts, each count relates a factual scenario coupled with a demand for relief without articulating a specific legal theory to support the claim. Debtor alludes to "contracts" and "purchase orders," and also explains that purchase orders often were not issued until after Debtor had provided at least some of the services specified in the purchase order. For every count except the last, the Court was left to guess whether Debtor was asserting claims under legal theories of express contract, contract implied in fact, quasi contract or some other theory.[5]

---

[4]Under Fed. R. Civ. Pro. 12(b)(6), a court may not consider declarations attached to the motion to dismiss.

[5]An express contract is formed through a written agreement or by verbal communication. *Temple University Hospital, Inc. v. City of Philadelphia*, 2006 WL 51206, *2 (Pa. Commonwealth Ct. January 3, 2006). In contrast, the terms of a contract implied in fact are determined by examining the dealings of the parties. *Ingrassia Construction Co. v. Walsh*, 337 Pa. Superior Ct. 58, 67, 486 A.2d 478, 483 (1984). The distinction between an express and an implied contract is the "mode of manifesting assent . . . . [I]ntention to make a promise may be manifested . . . by implication from other circumstances, including course of dealing . . . . *Restatement (Second) of Contracts* § 4, comment a. A quasi-contract or contract implied in law is not based upon the intentions of the parties, but on the policy of avoiding unjust enrichment. *Department of Environmental Resources v. Winn*, 142 Pa. Commonwealth Ct. 375, 380, 597 A.2d 281, 284 (1991). To avoid unjust enrichment, "the law implies a promise to pay a reasonable amount for the labor and material furnished, even absent a specific contract between the parties." *Limbach Company, LLC v. City of Philadelphia*, 905 A.2d 567, 575 (Pa. Commonwealth Ct. 2006). "To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a

The Court must give liberal consideration to the allegations in the Amended Complaint, but it is not required to sift through the facts in order to piece together a cause of action on the debtor's behalf. "No judge should be forced to search through a complaint like a pig hunting for truffles." *Abrahamson v. First National Bank of Holdrege*, 2006 WL 277109, *3 (D. Neb. 2006); *Cf. United States v. Stuckey,* 255 F.3d 528, 531 (8th Cir. 2001) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)) ("Judges are not like pigs, hunting for truffles buried in briefs"). An examination of each count illustrates the Court's difficulty in discerning the substance of the claims.

I. **Rule 12(b)(6) – Failure to state a claim upon which relief can be granted**

a. *Count I*

Count I seeks damages of $10,284.87 plus interest for materials purchased in preparation for performing under various "contracts" with Kellogg that were terminated before Debtor commenced performance. Debtor incorporates the factual allegations of earlier paragraphs numbered six through thirty, which outline the historical course of business between Kellogg and Debtor. Paragraph 32 of Count I states that "prior to the cancellation of the contracts in 2004 (as a result of the actions of Jungle),[6] Debtor was forced to incur costs for materials usable solely under and for the Kellogg contracts."

In order to survive a motion to dismiss in an action for breach of contract, whether express or implied, a plaintiff is required to plead the following: (1) the existence of a contract

---

benefit that it would be unconscionable for her to retain.'" *Torchia v. Torchia*, 346 Pa. Superior Ct. 229, 499 A.2d 581, 582 (1985) (internal citations omitted).

[6]No person or entity named "Jungle" is identified in any part of the Complaint or Amended Complaint.

7

and its essential terms; (2) a breach of the contract; and (3) resultant damages. *Chanel, Inc. v. Jupiter Group, Inc.,* 2006 WL 1793223, *6 (M.D. Pa.). In Count I, Debtor refers to an attached invoice (Exhibit "B") that Debtor sent to Kellogg for materials purchased for use in the Kellogg jobs. Debtor states that "Debtor was forced to incur costs for materials usable solely under and for the Kellogg contracts." (Amended Complaint, ¶ 32). However, Debtor fails to identify the contracts referred to in Paragraph 32 and describe their terms. Exhibit "B" is simply Debtor's demand for payment and does not include the elements of a contract. *See In re Klein*, 140 B.R. 103 (Bankr. E.D. Pa. 1992) (invoices allegedly representing work undertaken by debtor did not establish contractual obligations binding on the parties). Absent a description of the contracts on which Debtor bases its claim, Count I must fail. *See Tilahun v. Philip Morris Tobacco Co.*, 2005 WL 2850098 (S.D. Ohio) ("absent proof that a contract exists, a plaintiff's breach of contract suit cannot survive a Rule 12(b)(6) motion to dismiss.")

    b.  *Count II*

In Count II, Debtor states that Kellogg informed Debtor that it had set aside a fund for a floor surface improvement program and that, in reliance on this information, Debtor incurred expenses educating its employees about floor coatings and developing a coating tailored to the needs of Kellogg's facility. Debtor's claim for reimbursement of its educational and research and development expenses is based upon its purported reliance on a contract it had with Kellogg to perform floor coating. Debtor also is seeking its expectation interest as result of performing the contract in the form of lost profits.

On January 15, 2004, Kellogg issued a purchase order for "all labor, equipment, and materials to resurface parts of the SP-K aisle per [Debtor's] proposal to [Kellogg] dated January 9, 2004. . . . Total cost of this P.O. is not to exceed $30,000.00." (Amended Complaint, Exhibit

8

"C.") On February 27, 2004, Kellogg issued a check for $16,335.00 to Debtor for the purchase of materials for the floor project. However, a few days thereafter, Kellogg stopped payment on the check and hired HMS to apply the floor coating. The Amended Complaint alleges that as a result of the termination of the contract, Debtor lost $60,000.00 that it had expended for "research and development" of the floor coating and $300,000.00 in profit that it would have made from the contract.

Debtor does not specifically allege that the January 9, 2004 proposal submitted to Kellogg together with the responsive purchase order sent by Kellogg to Debtor created an express contract. Debtor does allege, however, that Kellogg issued a purchase order for the floor coating job and a check to purchase materials for the work, but later terminated the project and stopped payment on the check. (Amended Complaint, ¶ 46, 47.) Debtor states generally that the parties had a course of dealing through which Debtor would submit a proposal and begin work followed by the submission of a purchase order. (Amended Complaint, ¶ 10 – 12, Exhibit "A.") Debtor does not specifically allege in the Amended Complaint that this course of dealing created an contract implied in fact for the floor coating project, but the facts alleged are sufficient to support this legal theory.

Debtor alleges that it developed a floor coating treatment, that it performed a test on a floor section at the Lancaster plant and that it understood that it would be retained if the coating "held up" for a specified period. Approximately two years later, Debtor was retained to perform the project and Kellogg issued a check for materials. Almost immediately thereafter, the projected was terminated and payment halted on the check. These facts are sufficient to set forth a claim for breach of an implied in fact contract if it is assumed that Exhibit "B" supplies the contract terms. But Debtor failed to establish a nexus between Debtor's claim for $300,000.00 in

9

lost profits and $60,000.00 for research and development costs.[7] As set forth in the Amended Complaint, Count II fails to state a claim upon which relief can be granted and must be dismissed. Were this the only defect in Count II, the Court would permit Debtor to amend the Count to set forth more fully the basis for the damages claimed. However, the Court has determined that this claim must be dismissed because, as more fully discussed below, Debtor has admitted that it had no claims of this type against Kellogg when the petition was filed.

      *c.*     *Count III*

In Count III Debtor avers that Kellogg abandoned a software project that it had requested Debtor to commence "with assistance from its affiliate, Mindspring Media" and that Debtor incurred costs and expenses of $22,800.00 developing the software project.[8] (Amended Complaint, ¶ 54 - 57.) The Amended Complaint does not provide any time frame during which these services were performed and these costs incurred.[9] Again, Debtor appears to be basing its claim on a course of conduct that existed between the parties. However, there is no allegation as to the consideration that was to be paid for Debtor's services, a critical term in any contract,

---

[7]Debtor makes an allegation in paragraph 15 that sounds in quasi-contract stating that the floor coating developed by Debtor in anticipation of performing the Kellogg contract "saved Kellogg hundreds of thousands of dollars by decreasing maintenance labor and extending the service life of the products." However, a claim for unjust enrichment based on quasi-contract requires proof not only that a benefit was conferred on the defendant by the plaintiff, but also that retention of such benefits by the defendant would be inequitable. No such allegation is set forth in connection with paragraph 15. *See Limbach,* 905 A.2d at 575.

[8]The nature of the relationship between Debtor and Mindspring Media is not evident from the pleadings nor from Debtor's bankruptcy petition.

[9]It is noteworthy that the invoice included with the Amended Complaint as an exhibit bears a post-petition date, June 30, 2004, and that Count III requests interest commencing only on that date. This brings the contractual basis for Count III further into question since Debtor itself alleges that its business relationship with Kellogg had ceased in March 2004, two months prior to the date on the invoice.

10

whether express or implied. Accordingly, Count "III" must be dismissed for failure to state a claim on which relief can be granted.

### d. Count IV

Count IV alleges: (1) that "as part of the various Kellogg projects, Debtor was forced to dispose of waste generated from such projects;" (2) that "the waste is subject to specific state and/or federal laws relative to the disposal thereof;" (3) that "as a result of the improper allegation by [HMS] that Debtor was improperly disposing of waste, Debtor incurred costs/expenses of $19,900.00 to dispose of Kellogg-generated waste, pave its storage area, and pay for the labor to move the materials for the foregoing." (Amended Complaint, ¶¶ 60-62). Debtor seeks reimbursement jointly and severally from Kellogg and HMS for the costs it incurred disposing of the waste. It is unclear under what theory Debtor is pursuing in this action against Kellogg. Debtor concedes that the expense was incurred "to satisfy Kellogg as to the propriety of Debtor's waste disposal" after HMS allegedly made false representations to Kellogg about Debtor's waste disposal procedures. If Debtor is attempting to pursue a quasi-contract claim based upon unjust enrichment, this Count must fail because there has been no allegation that Kellogg either wrongfully secured or passively received a benefit that would be unconscionable to retain. *See Limbach*, 905 A.2d at 575. Having set forth facts in support of no other legal theory, Count IV must be dismissed.

### e. Count V

Count V alleges that Kellogg prevented Debtor from removing equipment from the trailers at the Lancaster facility and that Debtor's lack of access to its tools in these trailers prevented it from "perform[ing] such smaller replacement jobs as it may have been able to obtain." Debtor further avers that it would have profited in an amount between $250,000.00

11

and $400,000.00 in performing these "replacement" jobs. Thus, although the Amended Complaint does not so state, Count V is pleaded in the alternative to Count II. Kellogg asserts that Count V should be dismissed because Debtor's allegation that Kellogg "refus[ed] to return" Debtor's tools is contradicted by the record of the main bankruptcy case, wherein Kellogg filed a motion to compel Debtor to abandon the trailers.[10] Debtor responded to that motion with an Answer stating that "[i]t is admitted that Kellogg has repeated (sic) requested that Debtor remove the trailers." (Response to Kellogg's Motion for Abandonment, ¶ 6.)

The Court's examination of this issue is somewhat complicated by the fact that Kellogg's motion to dismiss quotes the language of the original Complaint, which varies from the language of the Amended Complaint regarding the trailers. Specifically, the Amended Complaint no longer avers that Kellogg "refus[ed] to return to the Debtor its tools and equipment" but rather avers that "Debtor was unable to regain the tools and equipment stored in its trailer unless it agreed to also remove the paint and solvent materials – at Debtor's cost – despite the materials having been obtained specifically for the Kellogg project." (Amended Complaint, ¶ 65.) However, Count V remains vulnerable to dismissal for failure to state a claim upon which relief can be granted. Even if the Court finds it to be true (1) that Debtor was "barred from Kellogg's premises in March 2004," (2) that Debtor was "unable to regain" its tools and equipment unless it also removed the paint and solvent that it purchased for Kellogg's floor, (3) that without its tools and equipment, Debtor was unable to perform work for other

---

[10]Kellogg further asserts that Debtor's failure to list the trailers on its schedule of personal property constitutes an admission that the trailers were not assets of the estate and could, therefore, not have been used by Debtor to generate income. The issue of whether omissions from Debtor's schedules and statements constitute judicial admissions that bar recovery is addressed below.

12

industries and (4) that it lost between $250,000.00 and $400,000.00 as a result, Debtor would still not be entitled to judgement against Kellogg. Debtor has failed to allege that it was improper as a matter of law for Kellogg to have made Debtor's access to the trailers contingent on Debtor's removal of the paint and solvents as well as the tools and equipment. Indeed it would appear only logical that the contents of the trailers be removed along with the trailers, which were Debtor's property. Debtor admitted in its response to Kellogg's Motion to Abandon that Kellogg had given Debtor contingent access to the trailers. Because Debtor did not plead that imposition of this contingency is either tortious or criminal, Count V must be dismissed.

        *f.*  *Count VI*

Finally, at Count VI, Debtor asserts that HMS and Kellogg "formed an illegal enterprise" within the meaning of RICO, and that "concerted efforts by [HMS] and resulting actions by Kellogg form a pattern and/or practice of activity made illegal by the RICO act. . . ." (Amended Complaint, ¶ 71.) Debtor avers that "[a]s a result of the illegal activities of Defendants, Debtor has been damaged in an amount between $662,984.87 - 812,984.87." Debtor invokes RICO's treble damage clause asserting that it is entitled to "judgment against Defendants, jointly and severally, in an amount of at least $1,988,954.60 (but not to exceed $2,438,954.60). . . ." (Amended Complaint, ¶ 11).

"In order to plead a violation of RICO, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity . . . . A pattern of racketeering activity requires at least two predicate acts of racketeering." *Lum v. Bank of America*, 361 F.3d 217 (3rd Cir. 2004). 18 U.S.C. § 1961 defines "racketeering activity" as

> (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is

Case 1:04-ap-00230-MDF    Doc 33    Filed 02/15/07    Entered 02/15/07 14:16:38    Desc
Main Document      Page 13 of 17

chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891-894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461-1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581-1592 (relating to peonage, slavery, and trafficking in persons)., [FN1] section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341-2346 (relating to trafficking in contraband cigarettes), sections 2421-24 (relating to white slave traffic), sections 175-178 (relating to biological weapons), sections 229-229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any

14

offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B);

18 U.S.C.A. § 1961(1).

No allegation of the Amended Complaint even remotely involves any of the activities included in the term "racketeering activity." Therefore, the Amended Complaint fails to state a claim upon which relief can be granted under RICO, and the motion to dismiss will be granted as to Count VI.

## II. Judicial Admissions

Admissions in the pleadings in a proceeding, stipulations and admissions in response to a request to admit are binding upon the party making the admission. Barry Russell, *Bankruptcy Evidence Manual* ¶ 801.22(2004 ed.). "Judicial admissions are concessions in pleadings or briefs that bind the party who makes them." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 211 n. 20 (3d Cir. 2006). Specifically, information provided in a debtor's bankruptcy schedules and statements, which are executed under penalty of perjury, may be considered judicial admissions.[11] *Larson v. Groos Bank, N.A.*, 204 B.R. 500, 502 (W.D. Tex. 1996) (citing cases);

---

[11]This court may take judicial notice of Debtor's schedules filed under penalty of perjury. Fed. R. Evid. 201; *Nantucket Investors, II v. California Fed. Bank (In re Indian Palms Associates, Ltd.),* 61 F.3d 197, 204-206 (3d Cir.1995)(judicial notice of documents in court's file is permissible).

*In re Garberg*, 2006 WL 1997415 (Bankr. E.D. Pa.). *See also In re Musgrove,* 187 B.R. 808 (Bankr.N.D.Ga.1995); *In re Leonard*, 151 B.R. 639 (Bankr. N.D.N.Y. 1992).[12]

In its Motion to Dismiss, Kellogg observes that Debtor reported accounts receivable of $4,933.14 on its schedule of personal property and indicated that it had no contingent or unliquidated claims in its schedules. The information on accounts receivable directly contradicts the open invoices attached to the Amended Complaint, which total $102,700.00. Debtor has not amended its schedules to list the accounts receivable due from Kellogg or the contingent, unliquidated claims against Kellogg and HMS. Accordingly, Debtors failure to lists these assets is an admission that such claims do not exist.

In *Larson,* the Texas District Court held that because bankruptcy schedules are executed under penalty of perjury, when offered against a debtor they may be considered as judicial admissions. *Larson*, 204 B.R. at 502. Specifically, by indicating "None" on the schedule of personal property next to the entry "other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," the court held that Larson admitted that he held no claims against the defendant. In the within case, Debtor made an identical representation about the existence of contingent and unliquidated claims on its schedules. Therefore, Debtor's statement of "None" in response to whether it held any contingent or unliquidated claims is a judicial admission that the claim against Kellogg had no value and that Debtor suffered no damages. Count II asserts a claim for breach of a contract implied in fact. Debtor, however, by failing to list this claim anywhere in its schedules admits

---

[12]The chapter 7 trustee appointed after the filing of the Amended Complaint steps into the shoes of Debtor and is subject to the same defenses that could have been asserted by Kellogg against Debtor. *See The Personal and Business Insurance Agency v. PFS (In re Personal and Business Insurance Agency)*, 334 F.3d 239, 245 (3d Cir. 2003).

that the claim does not exist. This is a judicial admission that supports dismissal of Count II.

Unlike its statements on contingent, unliquidated claims, Debtor does not assert in its schedules that it had no accounts receivable. Although it is not certain whether the total reported accounts receivable of $4,933.14 is due from Kellogg or from other customers, the Court finds that Debtor has made a judicial admission that it had no accounts receivable due from any party in excess of that amount.

## **Conclusion**

For the reasons stated above, the Amended Complaint will be dismissed with prejudice as to Kellogg. An appropriate order will be entered.

By the Court,

*Mary D. France*
Bankruptcy Judge

*This document is electronically signed and filed on the same date.*

Date: February 15, 2007

Case 1:04-ap-00230-MDF    Doc 33    Filed 02/15/07    Entered 02/15/07 14:16:38    Desc
Main Document    Page 17 of 17